UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VERONICA SOFIA ESCOBAR-RUIZ,

                    Petitioner,

                                              Case No. 1:25-cv-1232

v.

                                              Honorable Jane M. Beckering

KEVIN RAYCRAFT et al.,

                    Respondents.

_____/

## OPINION

Petitioner Veronica Sofia Escobar-Ruiz initiated this action on October 14, 2025, by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (§ 2241 Pet., ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of her current detention and asks the Court for the following relief: to accept jurisdiction over this matter; issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within fourteen (14) days; and to award attorneys' fees and costs for this action. (*Id.*, PageID.12.)

In an order (ECF No. 3) entered on October 17, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. Respondents filed their response (ECF No. 4) on October 22, 2025. Petitioner filed a reply (ECF No. 5) on October 27, 2025. For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

<u>Discussion</u>

I.    **Factual Allegations**

Petitioner is a "native and citizen of Mexico who last entered the United States at an unknown place, on an unknown date without being inspected and admitted or paroled by immigration officials." (Walker Decl. ¶ 4, ECF No. 4-1, PageID.39.) Petitioner represents that she "has resided in the United States since she arrived in or around 2007 with her sibling." (§ 2241 Pet., ECF No. 1, PageID.4.)

On November 16, 2015, Petitioner filed a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, with the United States Citizenship and Immigration Service (USCIS). (Walker Decl. ¶ 5, ECF No. 4-1, PageID.39.) USCIS denied Petitioner's application on November 15, 2016, because Petitioner had "not establish[ed] she came to the United States before she turned 16 years old and she did not establish she resided in the United States since June 15, 2007, until the date of filing the I-821D." (*Id.*)

On September 27, 2025, the United States Border Patrol (USBP) encountered Petitioner in Elgin, Illinois, and placed her into removal proceedings by issuing and filing a Form I-862, Notice to Appear, charging Petitioner with inadmissibility pursuant to sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner was

> an immigrant who is present in the United States without having been admitted or paroled, or who arrived at a time or place not designated by the Attorney General and is not in possession of a valid unexpired, immigrant visa, reentry permit, border crossing card, or other valid entry document required by the INA.

(*Id.* ¶ 6, PageID.40.) That same day, the USBP served Petitioner with a Warrant for Arrest of Alien and denied Petitioner without bond pursuant to INA § 235(b)(1)(A)(iii) on the basis that Petitioner is "an applicant for admission to the United States seeking admission and she is not clearly and beyond doubt entitled to admission." (*Id.* ¶ 7.)

On October 10, 2025, Petitioner, through counsel, requested a bond redetermination hearing before the Detroit Immigration Court. (*Id.* ¶ 8; *see also* ECF No. 4-2.) That court scheduled a bond hearing for October 24, 2025. (*Id.*) Petitioner is "currently in removal proceedings on the detained docket before the Detroit Immigration Court." (Walker Decl. ¶ 9, ECF No. 4-1, PageID.41.) In her reply, Petitioner represents that at her October 24, 2025, bond hearing, "the Immigration Judge summarily refused any and all relief . . . saying that his hands were tied by current BIA precedent set by *Matter v. Yajure Hurtado*, 29 I & N Dec. 216, 228 (BIA Sept. 5, 2025)." (ECF No. 5, PageID.67.)

## II.    Exhaustion

Respondents first contend that this Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted her administrative remedies. (ECF No. 4, PageID.18.) Specifically, Respondents argue that if the immigration court "decline[s] to grant [Petitioner] bond, she will have the right to appeal the decision to the Board of Immigration Appeals (BIA)." (*Id.*) Petitioner contends that "there is no applicable statute or rule that mandates administrative exhaustion under these circumstances." (ECF No. 5, PageID.64.) Petitioner also argues that exhaustion should be waived. (*Id.*, PageID.66.)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (internal quotation marks omitted). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's

habeas petition for unlawful mandatory detention." *See Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), to determine whether prudential exhaustion should be required." *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Thus, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust her administrative remedies. Moreover, this Court is not bound by and is not required to give deference to any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").

Second, Petitioner's constitutional challenge to her detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner here, generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all aliens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (2025). It is simply unlikely that any administrative review by the BIA would lead to the Government changing its position and precluding judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4. A court may choose to rule upon the merits of the issues presented when the "legal question is fit for resolution and delay means hardship." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, there is no question that delay would result in hardship to Petitioner. First, as noted above, Petitioner would need to appeal the Immigration Judge's denial of bond to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *See Rodriguez v.*

*Bostock*, 779 F. Supp. 3d 1239. 1245 (W.D. Wash. 2025). Moreover, Petitioner's appeal would likely be denied given the BIA's recent decision in *Yajure Hurtado*.

Additionally, while Petitioner is currently in removal proceedings before the Detroit Immigration Court, the record is silent as to when Petitioner's final merits hearing is scheduled before that court. It is possible that a determination from the BIA as to whether Petitioner is entitled to bond would come before any final decision regarding removal. Nevertheless, it is unmistakable that "depriving [Petitioner] of h[er] liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that prudential exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## III.    Merits Discussion

### A.    Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (§ 2241 Pet., ECF No. 1, PageID.11.) According to Petitioner, noncitizens who "previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings" are detained pursuant to 8 U.S.C. § 1226(a). (*Id.*) Respondents, however, contend that Petitioner "unambiguously meets every element for detention under § 1225(b)(2)," and that "even if the text of § 1225(b)(2) were ambiguous, its structure and history support the agency's interpretation of the statute." (ECF No. 4, PageID.21.)

In order to address the parties' arguments, this Court must engage in principles of statutory interpretation. "A statute should be construed so that effect is given to all its provisions." *Corey v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022 (noting how courts "must give effect to the clear meaning of statutes as written"). When engaging in statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). But, "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Raimondo*, 603 U.S. at 400.

With these principles in mind, the Court begins with the language of the statutes in question. Section 1225(b)(2)(a) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *See* 8 U.S.C. § 1225(b)(2)(a). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13). Section 1226(a), on the other hand, states that "[o]n a warrant

issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a).

Respondents argue that Petitioner "unambiguously is an 'applicant for admission' under the plain text of [§ 1225] because she is a noncitizen, she was not admitted to the United States, and she was present in the United States when she was apprehended." (ECF No. 6, PageID.58 (citing 8 U.S.C. § 1225(a)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020)). Respondents assert further that because "Petitioner has not agreed immediately to depart, logically she must be seeking to remain—a legal action that requires 'admission,' i.e., a lawful entry." (*Id.*, PageID.23.) Respondents also argue that "applicant for admission" presumptively "characterizes all unlawfully present noncitizens as applying for admission until they are either removed or successfully obtain a lawful entry, regardless of their subjective intent." (*Id.*) Essentially, Respondents assert that § 1225(b)(2)(A) mandates the detention of any noncitizen who is "present" in the United States and who has not been lawfully admitted. However, for the reasons discussed below, this Court agrees with the numerous other courts in the country that have concluded that Respondents' interpretation of the statute is too broad.

As set forth *supra*, § 1225(b)(2)(A) provides for the detention of an "alien seeking admission" after an "examining immigration officer" determines that the alien "is not clearly and beyond a doubt entitled to be admitted." In this Court's opinion, the phrase "seeking admission" refers to an action that is currently occurring and that would occur at the United States' border when the alien is being inspected. Here, under the facts and circumstances of Petitioner's case, an "examining immigration officer" did not make a determination as to whether Petitioner was not clearly and beyond a doubt entitled to be admitted when Petitioner came into the United States at some point in 2007. Petitioner was not crossing the border when she was arrested and detained.

8

Instead, Petitioner was detained on September 27, 2025, near Elgin, Illinois. (Walker Decl. ¶ 6, ECF No. 4-1, PageID.40.)

Granted, in 2015, Petitioner filed a Form I-821D, Consideration of Deferred Action for Childhood Arrivals. (Walker Decl. ¶ 5, ECF No. 4-1, PageID.39.) However, that request was denied on November 15, 2016. (*Id.*) There is nothing in the record currently before the Court to suggest that Petitioner has ever attempted to gain lawful status in the United States since 2016.

In light of the foregoing, the Court concludes that § 1225(b)(2)(A) applies to aliens undergoing inspection, which generally occurs at the United States' border, when they are seeking lawful entry into the United States. Thus, because the record shows that Petitioner resided in the United States for approximately 18 years before being arrested and detained, there is no logical reason to interpret § 1225(b)(2)(A) as applying to Petitioner. Moreover, although Plaintiff applied for the DACA program in 2015 and was denied in 2016, an individual who applies for relief under DACA cannot logically be said to be seeking admission. DACA "allows certain unauthorized aliens who entered the United States as children to apply for a two-year forbearance of removal. Those granted such relief are eligible for work authorization and various federal benefits." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 8 (2020). The two-year period of deferral is subject to renewal. *See id.* at 10. Nothing in the record before the Court suggests that Petitioner has ever actively sought admission since she arrived in the United States in 2007.

Unlike § 1225(b)(2)(A), section 1226(a) provides that, when dealing with "apprehension and detention of aliens," the Attorney General may issue a warrant and "arrest[] or detain[] [an alien] pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a). Here, § 1226(a) clearly applies to Petitioner's situation—Petitioner was apprehended in Illinois, arrested, and detained. Petitioner has been detained pending removal

proceedings before an immigration judge; thus, under § 1226(a), the Attorney General has discretion to either detain or release Petitioner on bond or conditional parole. This language allows the alien to request a bond redetermination by an immigration judge—which is exactly what Petitioner has done.

This Court's conclusion is consistent with the Supreme Court's clarification that sections 1225 and 1226 apply in different circumstances. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018). As the *Jennings* Court noted, § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Section 1226, however, applies to the process of "arresting and detaining" aliens who are already living within the United States but are still subject to removal. *See id.* at 287. Thus, in *Jennings*, the Supreme Court differentiated between noncitizens arriving to the United States, who are, therefore, governed by § 1225, and noncitizens already present in the country and are, accordingly, governed by § 1226.

The broader language of the statute, as amended, further supports the Court's conclusion. Congress recently passed the Laken Riley Act, which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), and who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). If the Court were to agree with Respondents' interpretation of §§ 1225 and 1226, § 1226(c)(1)(E) would be rendered entirely superfluous. *See Corey*, 556 U.S. at 314 ("A statute should be construed so that effect is given to all its provisions."); *Sea-Land Servs.*, 566 U.S. at 101; *see also Kentucky*, 23 F.4th at 603.

The Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States for many years and were already within the United States when apprehended and arrested. The reading of the pertinent statutes supports this conclusion. This Court has recently reached the same conclusion in two other habeas corpus matter filed by detainees at the North Lake Processing Center. *See Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025). Moreover, this Court is far from the first federal district court to reach this conclusion. *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *8; *see also Rodriguez v. Bostock*, 779 F. Supp. 3d at 1256–61; *Singh v. Lewis*, No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *3–5 (W.D. Ky. Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7–12 (W.D. Tex. Sept. 22, 2025); *Campos Leon v. Forestal*, 1:25-cv-1774-SEB-MJD, 2025 WL 2694763, at *2–5 (S.D. Ind. Sept. 22, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *5–9 (E.D. Va. Sept. 19, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-2677-CNS, 2025 WL 2652880, at *2–3 (D. Colo. Sept. 16, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136, at *2–4 (W.D. La. Aug. 27, 2025); *Romero v. Hyde*, No. 1:25-cv-11631-BEM, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411, at *9–16 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *6–9 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *3–9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 2:25-cv-02157-DLR, 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation*

*adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *6–8 (D. Mass. July 7, 2025).[1]

Accordingly, for the foregoing reasons, Petitioner's case is governed by § 1226(a), and she is subject to the discretionary bond determination set forth therein.

### B.    Fifth Amendment Due Process Considerations

Petitioner also argues that her detention violates the Fifth Amendment's Due Process Clause. (§ 2241 Pet., ECF No. 1, PageID.11.) Petitioner avers the "[G]overnment's detention of [her] without a bond redetermination hearing to determine whether she is a flight risk or danger to others violates her right to due process." (*Id.*) Respondents counter Petitioner's arguments by stating that Petitioner has received due process because she "received notice of the charges against her, has access to counsel, may appear before an immigration judge, has requested bond, and has been detained by ICE for less than four weeks." (ECF No. 4, PageID.34.) Respondents note further that a bond hearing was scheduled in immigration court for October 24, 2025. (*Id.*, PageID.34–35.)

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Thus, noncitizens such as Petitioner are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 236837, at *4 (6th Cir. Jan. 18, 2023).

---

[1] This is just a representative sampling of the various federal district courts that have reached the same conclusion as this Court.

Granted, if this Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), the Government's due process argument might hold true. However, as set forth *supra*, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute explicitly allows the Attorney General to continue to detain the arrested alien, or release the alien with either "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1), (2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). Thus, under *Mathews*, this Court must consider the following three factors: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-*

13

*Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Petitioner, through counsel, represents that she is the mother of three minor children, all of whom are United States citizens, and that her children depend upon her "for emotional and financial support." (§ 2241 Pet., ECF No. 1, PageID.9.) Petitioner represents that since 2007, she "has built a stable family and meaningful ties within her community." (*Id.*) In her reply, Petitioner states that she is "a single mother who separated from her partner several years ago." (ECF No. 5, PageID.63.) She avers further that her children "have been temporarily cared for by a family member this past month while she has been detained and have suffered extreme stress and anxiety during this traumatic separation." (*Id.*) Petitioner is now detained at a processing center that is in a different state than her home and family, and given the averments set forth above, there can be no doubt that Petitioner is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 2025 WL 1459154 at *7.

Likewise, the second *Mathews* factor weighs in Petitioner's favor. An individualized bond hearing ensures that an immigration judge can assess whether Petitioner poses a flight risk or a danger to the community, reducing the risk that Petitioner will suffer an "erroneous deprivation" of her rights. *See Lopez-Campos*, 2025 WL 2496379, at *9.

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025). However, given the record available to the Court, Respondents have not established a significant interest in potentially "detaining someone who [could convince] a neutral adjudicator, following a hearing and assessment of the evidence, that

14

his ongoing detention is not warranted." *See id.* Furthermore, Respondents have not established that an individualized hearing would pose "administrative or financial costs" in this case—"[t]o the contrary," Respondents' position "requires the government to continue funding and overseeing [Petitioner's] detention[.]" *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

## IV.  Proper Respondents

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Ct. of Ky.*, 410 U.S. 494–95 (1973). Thus,

> [r]ead literally, the language of [§] 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has "concluded that a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named Acting Field Office Director of the ICE Detroit Field Office Kevin Raycraft; United States Secretary of Homeland Security Kristi Noem; the United States Department of Homeland Security; United States Attorney General Pamela Bondi; the Executive Office for Immigration Review; the GEO Group, Inc.; and Unknown Party #1, referred to as the Warden of the North Lake Processing Center, as Respondents. Respondents argue that Acting

Field Office Director Raycraft is the only proper Respondent to this action. (ECF No. 4, PageID.35.)

In *Roman*, the Sixth Circuit stated that while it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court went on to note:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas,* 194 F. Supp. 2d at 374. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft,* 216 F. Supp .2d 51, 55 (E.D.N.Y.2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); *Rosenbloom, supra,* at 549. In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte,* 2000 WL 1617999, at *8 (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, the Court recognizes the need to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and directive that Petitioner receive a bond hearing or, alternatively, be released in the event that Petitioner is transferred out of the Western District of Michigan. The Court, therefore, will not dismiss Secretary Noem as a Respondent to these proceedings. The Court will, however, dismiss the United States Department of Homeland Security; United States Attorney General Pamela Bondi; the Executive Office for Immigration Review; the GEO Group, Inc.; and Unknown Party #1, referred to as the Warden of the North Lake Processing Center, as Respondents.

## V.      Summary

For the reasons set forth above, the Court disagrees with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A) and, therefore, that Petitioner is subject to mandatory detention. Instead, the Court concludes that Petitioner's detention is governed by § 1226(a) and, therefore, that Petitioner is entitled to a discretionary and individualized bond determination as set forth in that statute. Likewise, the Court finds that because Petitioner's detention is governed by § 1226(a), her current detention under § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

As the Eastern District of Michigan recently stated, "[t]he recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests." *Lopez-Campos*, 2025 WL 2496379, at *10. While Petitioner is entitled to a bond hearing, the Court notes that the immigration judge is in the better position to evaluate whether Petitioner poses a flight risk and a danger to the community. Accordingly, the Court leaves to the immigration judge's sound discretion a determination on that issue.

### <u>Conclusion</u>

For the reasons discussed above, the Court will enter an order and judgment granting Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and accompanying order and judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and accompanying order and judgment to certify compliance with this opinion. The status report shall

17

include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial. The Court will also dismiss the U.S. Department of Homeland Security, Pamela Bondi, the Executive Office for Immigration Review, the GEO Group, Inc., and Unknown Party #1 as Respondents in this matter.

Dated:      October 31, 2025                    /s/ Jane M. Beckering
                                                Jane M. Beckering
                                                United States District Judge